Angella TIMOTHY, Plaintiff–
Appellant,

v.

OUR LADY OF MERCY MEDICAL
CENTER and Our Lady of Mercy
Healthcare System, Inc., Defendants–
Appellees.

No. 06–0081–cv.

United States Court of Appeals,
Second Circuit.

Feb. 21, 2007.

18

Anne L. Clark, Vladeck, Waldman, Elias & Engelhard, P.C., New York, New York, for Plaintiff–Appellant.

Carlyle M. Dunway, Jr. (Arthur J. Robb, of counsel), Clifton Budd & DeMaria, LLP, New York, New York, for Defendants–Appellees.

PRESENT: Hon. GUIDO CALABRESI, Hon. ROBERT D. SACK, Circuit Judges, Hon. JED S. RAKOFF, District Judge.*

### SUMMARY ORDER

Plaintiff Angella Timothy claims that her employer, Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare Systems, Inc. (collectively, "OLM"), discriminated against her on the basis of race and gender, and unlawfully retaliated against her after she complained of the alleged discrimination, in violation, variously, of Section 1981 of the Civil Rights Act of 1966, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the New York State Human Rights Law, Section 296 *et seq.* of the New York Executive Law; and Section 8–107 *et seq.* of the Administrative Code of the City of New York. The district court granted defendants' summary judgment motion dismissing all claims. *See Timothy v. Our Lady of Mercy Med. Ctr.,* No. 03 Civ. 3556, 2005 U.S. Dist. LEXIS 31560, 2005 WL 3312054 (S.D.N.Y. Dec. 6, 2005). We review the district court's grant of summary judgment *de novo,* drawing all inferences in favor of the nonmoving party. *See Mackey v. Bd. of Educ.,* 386 F.3d 158, 163 (2d Cir.2004); *Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001). We presume the parties' familiarity with the facts,

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of    New York, sitting by designation.

the procedural history, and the scope of the issues presented on appeal, which we reference only as necessary to explain our decision.

■■■■ As to the claims of racial discrimination, we agree with the grant of summary judgment, substantially for the reasons stated by the district court. As to the claims of gender discrimination, there is no material evidence that Timothy was discriminated against simply because she was a woman. However, a claim of gender discrimination will also lie if a woman is discriminated against because, for example, she is a mother with small children. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 121 (2d Cir.2004) ("[T]he notions that mothers are insufficiently devoted to work, and that work and motherhood are incompatible, are properly considered to be, themselves, gender-based."). As the district court found, Timothy has made a sufficient *prima* facie showing of gender-plus discrimination to shift the burden to OLM to articulate a "legitimate, non-discriminatory reason for [each] adverse decision" of which Timothy complains.[2] *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 767 (2d Cir.2002).

On summary judgment, OLM duly introduced evidence of a non-discriminatory reason for each of the adverse employment decisions. With respect to the reduction in Timothy's responsibilities following her return from her maternity leave, OLM introduced evidence that in October or November of 2000, Carolyn Goetze, OLM's Chief Operating Officer, in conjunction with OLM's Chief Information Officer, John Volanto, decided that upon Timothy's return from maternity leave, Timothy's responsibilities would be focused exclusively on Medical Records, one of several departments previously under her charge. Goetze and Volanto reasoned that "Timothy did not have the skill required to manage the scope of her [prior] responsibilities and [they were] hopeful that she would succeed if she concentrated her efforts in one area." In addition, OLM introduced evidence that during this period it was experiencing a severe financial crisis, including $40 million in losses between 1999 and 2000, and that the Medical Records department had been experiencing significant problems that cost the hospital substantial sums of money by hampering its billing practices, warranting more focused attention by Timothy.[3]

With respect to Timothy's subsequent assignments to non-management positions and/or lesser responsibilities, OLM introduced evidence that numerous staff reductions occurred as a result of the hospital's financial crisis and that all administrators were asked to, and did, take on new, often "lesser" functions, as dictated by economic circumstances. Against this backdrop, Timothy became Nurse Recruiter, a position very important to OLM at the time because OLM was suffering a severe nursing shortage, which forced OLM to rely excessively on overtime pay to maintain its nursing staff. As Nurse Recruiter, Timothy was asked to help solve this problem, and her success led to her promotion to the newly-created position of Director of

---

**2.** As the District Court also correctly found, some of these decisions are time-barred for purposes of Timothy's Title VII claim.

**3.** Thereafter, James Rutherford, the man hired five months later as OLM's Chief Executive Officer, reassigned Medical Records to the Finance Department. No competent evidence contradicts OLM's explanation that OLM believed "the finance department was [in the] position to oversee medical records due to the fact that the process of reimbursement and billing ends with the finance department."

Nursing. As to the other positions for which others were hired, OLM also introduced evidence that these other persons were better qualified than Timothy was for these positions (*see infra* ).

■ Since such explanations are facially plausible and adequately supported by admissible evidence in the record, they entitle OLM "to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000). Our careful review of the evidence offered by Timothy on summary judgment convinces us that, even when all reasonable inferences are taken in Timothy's favor, she has failed to adduce an adequate basis to infer that OLM's proffered explanations are pretextual and that the adverse employment actions at issue resulted from unlawful discrimination. Although Timothy argues that OLM's non-discriminatory explanations are inconsistent, we are not persuaded that a reasonable fact-finder could find any material inconsistency in the proffered explanations. Indeed, they share a consistent theme of a hospital facing the double bind of a severe labor shortage and desperate financial straits that is trying to deal with this terrible situation through reorganization and reassignments.

Even assuming, however, that inconsistencies or other indicia of pretext are present, they would not here support, either alone or in conjunction with the other evidence, an inference that discrimination on the basis of motherhood was the real reason for any of these allegedly adverse actions. *See generally Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997) (en banc) ("[A] Title VII plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for *discrimination,* either because the pretext finding itself points to discrimination or because other

evidence in the record points in that direction—or both."). The only verbal suggestion that anyone at OLM harbored any animus against women with small children consists of two statements by the new CEO, Rutherford—one made to Timothy and one to a coworker who also had small children, Barbara Oddo. In the first statement, Rutherford simply asked Timothy "how many kids [she] had and their ages and how old they were," a plainly innocuous statement. The statement to Oddo— in which Rutherford inquired whether Oddo "would be able to work [full-time] having small children at home"—might in some contexts support an inference of discrimination, but no such inference is reasonably drawn here given the undisputed evidence that Rutherford, who had already promoted Oddo to acting general counsel, increased Oddo's salary shortly after the time of the challenged remark and thereafter further promoted her to Vice President. Furthermore, it appears that it was Oddo herself who had first raised this concern, seeking initially a part-time position at OLM because she "had [her] children."

As for Timothy's suggestion that an inference of discrimination can be drawn from the fact that OLM rejected her for positions that were given to unqualified individuals, none of whom were women with small children, plaintiff has failed to offer evidence that any women with children applied for any of these positions other than herself. As for Timothy herself, the evidence does not support her claim that she even applied for several of these positions. As to the positions for which Timothy did apply, the evidence does not support Timothy's claim that those who were chosen in preference to her were unqualified. For example, the woman who was chosen instead of Timothy for the position of Director of Clinical Ser-

vices received an MBA in healthcare management, was for seven years a program coordinator for the Department of Pharmacology at Columbia, and served for five more years as a Divisional Administrator in Columbia's Neurology Department. If anything, this woman's formal credentials for the job of Director of Clinical Services were superior to Timothy's. More importantly, absent a striking disparity in such credentials, one should be very hesitant to draw any inference from a battle of credentials. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (plaintiff seeking to prevent summary judgment on this basis must have "credentials ... so superior ... that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.' ") (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir.1999)).

We have considered Timothy's other arguments for inferring discrimination and find them without merit.

■ Finally, as to the retaliation claim, it is undisputed that, despite Timothy's complaint of discrimination, OLM gave Timothy a raise and a promotion. As to the "retaliatory acts" of which Timothy complains, they essentially consist of innocuous comments such as a criticism of Timothy as being unprepared for a meeting (for which she was, in fact, unprepared). On this evidence, we conclude that Timothy has failed to make a sufficient showing of actions by an employer that " 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,' " *Kessler v. Westchester County Dep't of Soc. Svs.*, 461 F.3d 199 (2d Cir.2006) (quoting *Burlington Northern & Santa Fe Ry. v. White*, ––– U.S. –––, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is **AFFIRMED**.